# EXHIBIT "A"

# NOTE

| October 10, 2005 | Horsham | Pennsylvania |
|---|---|---|
| [Date] | [City] | [State] |

### 6678 CHEW STREET, PHILADELPHIA, PA 19119
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 65,700.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  CitiMortgage, Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  6.000    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  First    day of each month beginning on  December 1, 2005    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  November 1, 2035    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  1000 Technology Drive, O' Fallon, MO  63368-2240

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 393.90    .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

 -5N (0207)            Form 3200 1/01

VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 3                Initials: AS 9J



## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.000        % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.



-5N (0207)

Form 3200 1/01
Initials: 

CitiMortgage 2.9.1.30 V3

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____          _____ (Seal)
                                      Anntionette Jones                 -Borrower

_____          _____ (Seal)
                                      Glenn S. Jones                    -Borrower

                                           *(Sign Original Only)*

Pay to the order of

_____
without recourse on us CitiMortgage, Inc.

Janet L. Sims, Vice President
CitiMortgage, Inc.



# EXHIBIT "B"

51296130
**Page: 1 of 17**
10/21/2005 04:21PM

This Document Recorded
10/21/2005
04:21PM
Doc Code: M    Commissioner of Records, City of Philadelphia

Doc Id  51296130
Receipt ▮
Rec Fee: 126.60

Prepared By:
CitiMortgage, Inc.
Main Street Plaza 1000
Suite 310
Voorhees, NJ 08043

**Record & Return To**
**UCS SSI**
**1424 Easton Rd 100D**
**Horsham PA 19044**

Return To:
CitiMortgage, Inc.
Attn: Document Processing
P.O. Box 790021
St. Louis, MO 63179-0021

Premises: 6678 CHEW STREET
PHILADELPHIA, PA 19119-

[Space Above This Line For Recording Data]

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  October 10, 2005
together with all Riders to this document.
(B) "Borrower" is  Anntionette Jones and Glenn S Jones, husband and wife

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is CitiMortgage, Inc.

Lender is a Corporation

PENNSYLVANIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT         Form 3039  1/01

-6(PA) (0502)

Page 1 of 16         Initials: AJ  GJ

VMP Mortgage Solutions, Inc. (800)521-7291

organized and existing under the laws of  New York
Lender's address is 1000 Technology Drive, O' Fallon, MO   63368-2240

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated  October 10, 2005
The Note states that Borrower owes Lender  Sixty Five Thousand Seven Hundred

Dollars
(U.S. $ 65,700.00            ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than  11/01/2035
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | Schedule ''A'' |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.



Initials: _PS.9J_

VMP-6(PA) (0502)        Page 2 of 16        Form 3039   1/01
CitiMortgage 2.9.1.30 V3

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the   County          [Type of Recording Jurisdiction]
of  Philadelphia                                                              [Name of Recording Jurisdiction]:
See attached Schedule A

which currently has the address of 6678 CHEW STREET

                                                                                              [Street]
PHILADELPHIA                                        [City], Pennsylvania  19119-           [Zip Code]
("Property Address"):

        TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."



VMP®-6(PA) (0502)                          Page 3 of 16

Initials: AS ∂J

                                                              Form 3039  1/01
                                                              CitiMortgage 2.9.1.30 V3

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be



paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

Initials: 

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.



-6(PA) (0502)

Initials: BJ 9J

Form 3039    1/01
CitiMortgage 2.9.1.30 V3

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.



Initials: _AS  gS_

Form 3039    1/01
CitiMortgage 2.9.1.30 V3

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.



Initials: AJ GJ

CitiMortgage 2.9.1.30 V3

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.


-6(PA) (0502)

Page 9 of 16

Initials: 

Form 3039   1/01
CitiMortgage 2.9.1.30 V3

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be

 

dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to



Page 11 of 16

Initials: 

Form 3039  1/01
CitiMortgage 2.9.1.30 V3

have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or



Initials: AJ JJ

Page 12 of 16

Form 3039    1/01
CitiMortgage 2.9.1.30 V3

agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.



Initials: A J G J

Form 3039  1/01
CitiMortgage 2.9.1.30 V3

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

25. Reinstatement Period. Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

26. Purchase Money Mortgage. If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

27. Interest Rate After Judgment. Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.



Initials: _AJ  JJ_

-6(PA) (0502)

Form 3039  1/01

CitiMortgage 2.9.1.30 V3

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          Anntionette Jones                -Borrower

_____          _____ (Seal)
                                          Glenn S. Jones                    -Borrower
                                          (Sign Original Only)


-6(PA) (0502)                    Page 15 of 16                    Form 3039   1/01
                                                                 CitiMortgage 2.9.1.30 V3

COMMONWEALTH OF PENNSYLVANIA,

County ss: *Philadelphia*

On this, the *10* day of *October 2005* , before me, the undersigned officer, personally appeared

*Anntionette Jones & Glenn S. Jones*

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires:

_____

_____
Title of Officer

```
COMMONWEALTH OF PENNSYLVANIA
NOTORIAL SEAL
STEPHANIE KELLY, NOTARY PUBLIC
HORSHAM TWP., MONTGOMERY COUNTY
MY COMMISSION EXPIRES MAY 30, 2009
```

Certificate of Residence
I, *Stephanie Kelly* , do hereby certify that
the correct address of the within-named Mortgagee is

Witness my hand this *10* day of *October 2005* .

_____
Agent of Mortgagee

VMP -6(PA) (0502)

Page 16 of 16

Initials: *AJ GJ*

Form 3039  1/01
CitiMortgage 2.9.1.30 V3

Closing Date: October 10, 2003

See attached Schedule A

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE on the Southwesterly side of Chew Street at the distance of Two hundred seventeen feet six inches Northwestwardly from said Horrter Street in the 22nd Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said Chew Street Fifteen feet four and one-half inches and extending Southwestwardly Sixty-five feet six inches to a Three Feet wide alley being Fourteen feet ten and five-eighths inches wide on the rear line.

BEING PREMISES known and numbered 6678 Chew Street.

**EXHIBIT "C"**

eRecorded in Philadelphia PA   Doc Id: 52772958
04/22/2014 09:07AM    Receipt#:
Page 1 of 3    Rec Fee: $203.00
Commissioner of Records    Doc Code: A
State RTT:    Local RTT:

**Prepared By / Return To:**
**E.Lance/NTC, 2100 Alt. 19 North,**
**Palm Harbor, FL 34683**
**(800)346-9152**

**Citi Loan No**
**GreenTree Loan No**

# ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **CITIMORTGAGE, INC.,WHOSE ADDRESS IS 1000 TECHNOLOGY DRIVE, OFALLON, MO, 63368, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Mortgage therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **GREEN TREE SERVICING LLC, WHOSE ADDRESS IS 7360 SOUTH KYRENE ROAD, T314, TEMPE, AZ 85283 (800)643-0202, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage dated 10/10/2005, in the amount of $65,700.00 made by **ANNTIONETTE JONES AND GLENN S. JONES** to **CITIMORTGAGE, INC.** recorded on 10/21/2005, in the Office of the Recorder of Deeds of PHILADELPHIA County, in the State of Pennsylvania, in Book , Page  and/or Document # 51296130.

SEE EXHIBIT A ATTACHED

Property is more commonly known as: 6678 CHEW STREET, PHILADELPHIA, PA 19119.

**Dated this 21st day of April in the year 2014**
**CITIMORTGAGE, INC.**

By: _____
**MATTHEW SAYLOR**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

52772956   Page 2 of 3
04/22/2014 09:07 AM

Citi Loan No
GreenTree Lo

STATE OF FLORIDA  COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 21st day of April in the year 2014, by Matthew
Saylor as VICE PRESIDENT of CITIMORTGAGE, INC., who, as such VICE PRESIDENT being authorized to
do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known
to me.

**FRANCÉ M. MOSS - NOTARY PUBLIC**
**COMM EXPIRES:  08/05/2016**

Francé M. Moss
Notary Public State of Florida
My Commission # EE 222298
Expires August 5, 2016

Assignment of Mortgage from:
**CITIMORTGAGE, INC.,WHOSE ADDRESS IS 1000 TECHNOLOGY DRIVE, OFALLON, MO, 63368,
(ASSIGNOR),**
to:
**GREEN TREE SERVICING LLC, WHOSE ADDRESS IS 7360 SOUTH KYRENE ROAD, T314, TEMPE,
AZ 85283 (800)643-0202, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

Mortgagor: **ANNTIONETTE JONES AND GLENN S. JONES**

When Recorded Return To:
CitiMortgage, Inc.
C/O Nationwide Title Clearing, Inc. 2100 Alt. 19 North
Palm Harbor, FL 34683

All that certain lot or piece of ground situated in
Mortgage Premise: 6678 CHEW STREET
                  PHILADELPHIA, PA 19119
                  PHILADELPHIA
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said Mortgage.

**Certificate of Residence**

I, **Matthew Saylor**, do certify that the precise address of the within named Assignee is:
**GREEN TREE SERVICING LLC, WHOSE ADDRESS IS 7360 SOUTH KYRENE ROAD, T314, TEMPE,
AZ 85283 (800)643-0202, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

**MATTHEW SAYLOR**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and
supporting documentation prior to signing.

52772956    Page 3 of 3
04/22/2014 09:07AM

Loan No:

`EXHIBIT A`

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED. SITUATE ON THE SOUTHWESTERLY SIDE OF CHEW STREET AT THE DISTANCE OF TWO HUNDRED SEVENTEEN FEET SIX INCHES NORTHWESTWARDLY FROM SAID HORRTER STREET IN THE 22ND WARD OF THE CITY OF PHILADELPHIA. CONTAINING IN FRONT OR BREADTH ON THE SAID CHEW STREET FIFTEEN FEET FOUR AND ONE-HALF INCHES AND EXTENDING SOUTHWESTWARDLY SIXTY-FIVE FEET SIX INCHES TO A THREE FEET WIDE ALLEY BEING FOURTEEN FEET TEN AND FIVE-EIGHTHS INCHES WIDE ON THE REAR LINE.

# Delaware

PAGE  1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"DITECH MORTGAGE CORP", A CALIFORNIA CORPORATION,

"DT HOLDINGS LLC", A DELAWARE LIMITED LIABILITY COMPANY,

WITH AND INTO "GREEN TREE SERVICING LLC" UNDER THE NAME OF
"GREEN TREE SERVICING LLC", A LIMITED LIABILITY COMPANY
ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE,
AS RECEIVED AND FILED IN THIS OFFICE THE THIRTEENTH DAY OF
AUGUST, A.D. 2015, AT 1:35 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF
THE AFORESAID CERTIFICATE OF MERGER IS THE THIRTY-FIRST DAY OF
AUGUST, A.D. 2015, AT 12:05 O'CLOCK A.M.

2458190  8100M

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 2641973

DATE: 08-13-15

You may verify this certificate online
at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations

# STATE OF DELAWARE
# CERTIFICATE OF MERGER

Pursuant to Title 6, Section 18-209 of the Delaware Limited Liability Company Act, the undersigned hereby executes the following Certificate of Merger:

**FIRST**: The surviving limited liability company is **Green Tree Servicing LLC**, a Delaware limited liability company, and the corporation and limited liability company being merged into this surviving limited liability company are:

> **DT Holdings LLC**, a Delaware limited liability company, and
> **Ditech Mortgage Corp**, a California corporation.

**SECOND:** The Agreement and Plan of Merger has been approved, adopted, certified, executed and acknowledged by each of the constituent corporations and limited liability companies pursuant to Title 6, Section 18-209 of the Delaware Limited Liability Company Act.

**THIRD:** The name of the surviving limited liability company is hereby amended to **Ditech Financial LLC**, a Delaware limited liability company (as such surviving entity, the "Surviving Limited Liability Company").

**FOURTH:** The mergers are to become effective as of 12:05 AM EDT on August 31, 2015.

**FIFTH:** The Agreement and Plan of Merger is on file at 3000 Bayport Drive, Suite 880, Tampa, FL 33607, the principal place of business of the Surviving Limited Liability Company.

**SIXTH:** A copy of the Agreement and Plan of Merger will be furnished by the Surviving Limited Liability Company on request, without cost, to any stockholder or member of the constituent corporations or limited liability companies, as applicable.

[The remainder of page intentionally left blank.]

**IN WITNESS WHEREOF,** said Surviving Limited Liability Company has caused this certificate to be signed by an authorized officer, the 4th day of August, 2015.

GREEN TREE SERVICING LLC

By: _Wanda Lamb Lindow_
Name: Wanda Lamb-Lindow
Title: Assistant Secretary

*[Certificate of Merger]*

Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

_____ Space above for Recorder's use _____



## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **DITECH FINANCIAL LLC FKA GREEN TREE SERVICING LLC SOMETIMES KNOWN AS GREEN TREE SERVICES LLC**, whose address is 345 ST. PETER STREET, ST. PAUL, MN 55102, (ASSIGNOR), does hereby grant, assign and transfer to **WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR PRETIUM MORTGAGE ACQUISITION TRUST**, whose address is C/O PRETIUM MORTGAGE CREDIT MANAGEMENT, 120 SOUTH SIXTH STREET, #2100, MINNEAPOLIS, MN 55402, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **10/10/2005**
Original Loan Amount: **$65,700.00**
Executed by (Borrower(s)): **ANNTIONETTE JONES & GLENN S JONES**
Original Lender: **CITIMORTGAGE, INC.**
Filed of Record: In Book/Liber/Volume N/A, Page N/A,
Document/Instrument No: 51296130 in the Recording District of **PHILADELPHIA, PA**, Recorded on 10/21/2005.
**MUNICIPALITY: CITY OF PHILADELPHIA, 22ND WARD**

Legal Description: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **6678 CHEW STREET, PHILADELPHIA, PENNSYLVANIA 19119**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: 9/7/18

DITECH FINANCIAL LLC FKA GREEN TREE SERVICING LLC SOMETIMES KNOWN AS GREEN TREE SERVICES LLC, BY PRETIUM MORTGAGE CREDIT PARTNERS I LOAN ACQUISITION, LP, ITS ATTORNEY-IN-FACT

By: JASON KNAPP
Title: AUTHORIZED SIGNATORY

Witness Name: CALVIN MEYER
POA Batch#10991
POA was recorded in Philadelphia county PA on 10/9/2018 Inst#53426617

I hereby certify the precise address of the within named WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR PRETIUM MORTGAGE ACQUISITION TRUST (*Assignee*) is C/O PRETIUM MORTGAGE CREDIT MANAGEMENT, 120 SOUTH SIXTH STREET, #2100, MINNEAPOLIS, MN 55402.

Thu Van Wittman

---

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

---

State of        MINNESOTA
County of      HENNEPIN

On __On 7.18__, before me, THU VAN WITTMANN, a Notary Public, personally appeared JASON KNAPP, Authorized Signatory of/for PRETIUM MORTGAGE CREDIT PARTNERS I LOAN ACQUISITION, LP, AS ATTORNEY-IN-FACT FOR DITECH FINANCIAL LLC FKA GREEN TREE SERVICING LLC SOMETIMES KNOWN AS GREEN TREE SERVICES LLC, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of MINNESOTA that the foregoing paragraph is true and correct. I further certify JASON KNAPP, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

Thu Van Wittman

(Notary Name): THU VAN WITTMANN
My commission expires: 01/31/2023

THU VAN WITTMANN
Notary Public
State of Minnesota
My Commission Expires
January 31, 2023

**EXHIBIT "A"**

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED. SITUATE ON THE SOUTHWESTERLY SIDE OF CHEW STREET AT THE DISTANCE OF TWO HUNDRED SEVENTEEN FEET SIX INCHES NORTHWESTWARDLY FROM SAID HORRTER STREET IN THE 22ND WARD OF THE CITY OF PHILADELPHIA. CONTAINING IN FRONT OR BREADTH ON THE SAID CHEW STREET FIFTEEN FEET FOUR AND ONE-HALF INCHES AND EXTENDING SOUTHWESTWARDLY SIXTY-FIVE FEET SIX INCHES TO A THREE FEET WIDE ALLEY BEING FOURTEEN FEET TEN AND FIVE-EIGHTHS INCHES WIDE ON THE REAR LINE.

| | |
|---|---|
| **Assigned From:** | CITIMORTGAGE, INC. |
| **To:** | GREEN TREE SERVICING LLC |
| **AOM Recorded:** | 04/22/2014 |
| **AOM Recording Details:** | Book: N/A; Page: N/A; DocumentNo: ▓▓▓ |

Prepared By and Return To:
**Murat Deniz**
Meridian Asset Services, LLC
140 Fountain Parkway N Suite 100
St. Petersburg, FL 33716
(239) 351-2442

_____| Space above for Recorder's use _____

### ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR PRETIUM MORTGAGE ACQUISITION TRUST,** whose address is **C/O SELENE FINANCE LP, 3501 OLYMPUS BLVD., SUITE 500, DALLAS, TX 75019,** (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST,** whose address is **C/O SELENE FINANCE LP, 3501 OLYMPUS BLVD., SUITE 500, DALLAS, TX 75019,** (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **10/10/2005**
Original Loan Amount: **$65,700.00**
Executed by (Borrower(s)): **ANNTIONETTE JONES & GLENN S JONES**
Original Lender: **CITIMORTGAGE, INC.**
Filed of Record: In Book/Liber/Volume N/A, Page N/A
Document/Instrument No: **51296130** in the Recording District of **Philadelphia, PA**, Recorded on **10/21/2005**.

Legal Description & Chain Exhibit: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **6678 CHEW STREET, PHILADELPHIA, PENNSYLVANIA 19119**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _____ AUG 3 0 2024 _____

**WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR PRETIUM MORTGAGE ACQUISITION TRUST, BY SELENE FINANCE LP, ITS ATTORNEY-IN-FACT**

By: _____
Title: **AUTHORIZED SIGNER**

Witness Name: _____

POA Batch#12496
POA was recorded in Philadelphia PA on
3/31/2022 Inst#54013390

I hereby certify the precise address of the within named **U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST** *(Assignee) is* **C/O SELENE FINANCE LP, 3501 OLYMPUS BLVD., SUITE 500, DALLAS, TX 75019.**

_____

---

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

---

State of **TEXAS**
County of **DALLAS**

On _____ AUG 3 0 2024 _____, before me, **Sandra Cuellar**, a Notary Public, personally appeared _____ Matt Wylie _____, **AUTHORIZED SIGNER of/for SELENE FINANCE LP, AS ATTORNEY-IN-FACT FOR WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR PRETIUM MORTGAGE ACQUISITION TRUST,** personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **TEXAS** that the foregoing paragraph is true and correct. I further certify _____ Matt Wylie _____, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

_____
**Sandra Cuellar**

(Notary Name): _____
My commission expires: _____ MAY 0 6 2028 _____

SANDRA CUELLAR
Notary Public, State of Texas
Comm. Expires 05-06-2028
Notary ID 132467105

## EXHIBIT "A"

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED. SITUATE ON THE SOUTHWESTERLY SIDE OF CHEW STREET AT THE DISTANCE OF TWO HUNDRED SEVENTEEN FEET SIX INCHES NORTHWESTWARDLY FROM SAID HORRTER STREET IN THE 22ND WARD OF THE CITY OF PHILADELPHIA. CONTAINING IN FRONT OR BREADTH ON THE SAID CHEW STREET FIFTEEN FEET FOUR AND ONE-HALF INCHES AND EXTENDING SOUTHWESTWARDLY SIXTY-FIVE FEET SIX INCHES TO A THREE FEET WIDE ALLEY BEING FOURTEEN FEET TEN AND FIVE-EIGHTHS INCHES WIDE ON THE REAR LINE.

### Assignment Chain

| | |
|---|---|
| Assigned From: | DITECH FINANCIAL LLC FKA GREEN TREE SERVICING LLC SOMETIMES KNOWN AS GREEN TREE SERVICES LLC |
| To: | WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR PRETIUM MORTGAGE ACQUISITION TRUST |
| AOM Recording Details: | Recorded 10/11/2018; Book: N/A; Page: N/A; Instrument: 53428261 |

# EXHIBIT "D"

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

In re:    Anntionette Jones

Case No.:        18-13706\mdc

Chapter:        13

Debtor(s)

# Chapter 13 Plan

✔ Original

_____ Amended  Plan Post Confirmation

Date:  May 19, 2020

### THE DEBTOR HAS FILED FOR RELIEF UNDER
### CHAPTER 13 OF THE BANKRUPTCY CODE

### YOUR RIGHTS WILL BE AFFECTED

You should have received from the court a separate Notice of the Hearing on Confirmation of Plan, which contains the date of the confirmation hearing on the Plan proposed by the Debtor.  This document is the actual Plan proposed by the Debtor to adjust debts.  You should read these papers carefully and discuss them with your attorney.  **ANYONE WHO WISHES TO OPPOSE ANY PROVISION OF THIS PLAN MUST FILE A WRITTEN OBJECTION** in accordance with Bankruptcy Rule 3015 and Local Rule 3015-4. **This Plan may be confirmed and become binding, unless a written objection is filed.**

### IN ORDER TO RECEIVE A DISTRIBUTION UNDER THE PLAN, YOU MUST FILE A PROOF OF CLAIM BY THE DEADLINE STATED IN THE NOTICE OF MEETING OF CREDITORS.

| |
|---|
| **Part 1:  Bankruptcy Rule 3015.1(c) Disclosures** |
| Plan contains non-standard or additional provisions – see Part 9<br>Plan limits the amount of secured claim(s) based on value of collateral – see Part 4<br>Plan avoids a security interest or lien – see Part 4 and/or Part 9 |
| **Part 2:  Plan Payment, Length and Distribution –** *PARTS  2(c) & 2(e) MUST BE COMPLETED IN EVERY CASE* |
| **§ 2(a)(1)  Initial Plan:**<br>**Total Base Amount** to be paid to the Chapter 13 Trustee ("Trustee") $ _____<br>Debtor shall pay the Trustee $ _____ per month for ____ months; and<br>Debtor shall pay the Trustee $ _____ per month for ____ months.<br>Other changes in the scheduled plan payment are set forth in § 2(d)<br><br>**§ 2(a)(2)  Amended Plan:**<br>**Total Base Amount** to be paid to the Chapter 13 Trustee ("Trustee") **$21,777.00**<br>The Plan payments by Debtor shall consists of the total amount previously paid **($5,978.00)** added to the new monthly Plan payments in the amount of **$259.00** beginning **June 2020** (date) and continuing for <u>61</u> months.<br>Other changes in the scheduled plan payment are set forth in § 2(d) |

**§ 2(b)  Debtor shall make plan payments to the Trustee from the following sources in addition to future wages (Describe source, amount and date when funds are available, if known):**

**§ 2(c)  Alternative treatment of secured claims**:

**None.**  If "None" is checked, the rest of § 2(c) need not be completed.

**Sale of real property**
*See § 7(c) below for detailed description*

**Loan modification with respect to mortgage encumbering property**:
*See § 4(f) below for detailed description*

**§ 2(d)  Other information that may be important relating to the payment and length of Plan:**

**§ 2(e) Estimated Distribution**:

A.  Total Priority Claims (Part 3)

    1.  Unpaid attorney's fees                             $3,575.00

    2.  Unpaid attorney's costs                           $

    3.   Other priority claims (e.g., priority taxes)    $

B.  Total distribution to cure defaults (§ 4(b))     $1,5926.43

C.  Total distribution on secured claims (§§ 4(c) &(d))  $83.61  D.

Total distribution on unsecured claims (Part 5)    $

                              Subtotal          $

E.  Estimated Trustee's Commission          $2,000.00

F.  Base Amount                           $21,777.00

## Part 3:  Priority Claims (Including Administrative Expenses & Debtor's Counsel Fees)

**§ 3(a) Except as provided in § 3(b) below, all allowed priority claims will be paid in full unless the creditor agrees otherwise:**

| Creditor | Type of Priority | Estimated Amount to be Paid |
|---|---|---|
| Michael D. Sayles, Esquire | Admin. Priority | $3,575.00 |

**§ 3(b)  Domestic Support obligations assigned or owed to a governmental unit and paid less than full amount.**

☑ **None.**  If "None" is checked, the rest of § 3(b) need not be completed.

The allowed priority claims listed below are based on a domestic support obligation that has been assigned to or is owed to a governmental unit and will be paid less than the full amount of the claim.  *This plan provision requires that payments in § 2(a) be for a term of 60 months; see 11 U.S.C. § 1322(a)(4).*

| Name of Creditor | Amount of claim to be paid |
|---|---|
|  |  |
|  |  |

## Part 4:  Secured Claims

**§ 4(a) Secured claims not provided for by the Plan:**

☑ **None.**  If "None" is checked, the rest of § 4(a) need not be completed.

| Creditor | Secured Property |
|---|---|
| If checked, debtor will pay the creditor(s) listed below directly in accordance with the contract terms or otherwise by agreement. |  |
| If checked, debtor will pay the creditor(s) listed below directly in accordance with the contract terms or otherwise by agreement. |  |

**§ 4(b)  Curing default and maintaining payments**

**None.**  If "None" is checked, the rest of § 4(b) need not be completed.

The Trustee shall distribute an amount sufficient to pay allowed claims for prepetition arrearages; and, Debtor shall pay directly to creditor monthly obligations falling due after the bankruptcy filing in accordance with the parties' contract.

| Creditor | Description of Secured Property and Address, if real property | Current Monthly Payment to be paid directly to creditor by Debtor | Estimated Arrearage | Interest Rate on Arrearage, if applicable (%) | Amount to be Paid to Creditor by the Trustee |
|---|---|---|---|---|---|
| **Rushmore Loan Management Services** | residence |  |  |  | $15,926.43 |

**§ 4(c)  Allowed secured claims to be paid in full:  based on proof of claim or pre-confirmation determination of the amount, extent or validity of the claim**

      **None.**  If "None" is checked, the rest of § 4(c) need not be completed.

     (1)  Allowed secured claims listed below shall be paid in full and their liens retained until completion of payments under the plan.

     (2) If necessary, a motion, objection and/or adversary proceeding, as appropriate, will be filed to determine the amount, extent or validity of the allowed secured claim and the court will make its determination prior to the confirmation hearing.

     (3) Any amounts determined to be allowed unsecured claims will be treated either**:** (A) as a general unsecured claim under Part 5 of the Plan or (B) as a priority claim under Part 3, as determined by the court.

     (4) In addition to payment of the allowed secured claim, "present value" interest pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii) will be paid at the rate and in the amount listed below.  *If the claimant included a different interest rate or amount for "present value" interest in its proof of claim or otherwise disputes the amount provided for "present value" interest, the claimant must file an objection to confirmation.*

     (5) Upon completion of the Plan, payments made under this section satisfy the allowed secured claim and release the corresponding lien.

| Name of Creditor | Description of Secured Property and Address, if real property | Allowed Secured Claim | Present Value Interest Rate | Dollar Amount of Present Value Interest | Total Amount to be paid |
|---|---|---|---|---|---|
| **City of Philadelphia** | **residence** | | | | **83.91** |

**§ 4(d)  Allowed secured claims to be paid in full that are excluded from 11 U.S.C. § 506**

    ✓**None.**  If "None" is checked, the rest of § 4(d) need not be completed.

    The claims below were either (1) incurred within 910 days before the petition date and secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor(s), or (2) incurred within 1 year of the petition date and secured by a purchase money security interest in any other thing of value.

     (1) The allowed secured claims listed below shall be paid in full and their liens retained until completion of payments under the plan.

     (2) In addition to payment of the allowed secured claim, "present value" interest pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii) will be paid at the rate and in the amount listed below.  If the claimant included a different interest rate or amount for "present value" interest in its proof of claim, the court will determine the present value interest rate and amount at the confirmation hearing.

| Name of Creditor | Collateral | Amount of Claim | Present Value Interest | Estimated total payments |
|---|---|---|---|---|
| _____ | _____ | _____ | _____ % | $ _____ |
| _____ | _____ | _____ | _____ % | $ _____ |

4

**§ 4(e)  Surrender**

✓ **None.**  If "None" is checked, the rest of § 4(e) need not be completed.

(1)  Debtor elects to surrender the secured property listed below that secures the creditor's claim.
(2)  The automatic stay under 11 U.S.C. § 362(a) and 1301(a) with respect to the secured property terminates upon confirmation of the Plan.
(3)  The Trustee shall make no payments to the creditors listed below on their secured claims.

| Creditor | Secured Property |
|---|---|
|  |  |

**§ 4(f)  Loan Modification**

✓ **None.**  If "None" is checked, the rest of § 4(f) need not be completed.

(1)  Debtor shall pursue a loan modification directly with _____ or its successor in interest or its current servicer ("Mortgage Lender"), in an effort to bring the loan current and resolve the secured arrearage claim.

(2)  During the modification application process, Debtor shall make adequate protection payments directly to Mortgage Lender in the amount of $_____ per month, which represents _____ (***describe basis of adequate protection payment***).  Debtor shall remit the adequate protection payments directly to the Mortgage Lender.

(3)  If the modification is not approved by _____(date), Debtor shall either (A) file an amended Plan to otherwise provide for the allowed claim of the Mortgage Lender; or (B) Mortgage Lender may seek relief from the automatic stay with regard to the collateral and Debtor will not oppose it.

## Part 5:  General Unsecured Claims

**§ 5(a)  Separately classified allowed unsecured non-priority claims**

✓ **None.**  If "None" is checked, the rest of § 5(a) need not be completed.

| Creditor | Basis for Separate Classification | Treatment | Amount of Claim | Amount to be paid |
|---|---|---|---|---|
|  |  |  |  |  |

**§ 5(b)  Timely filed unsecured non-priority claims**

(1) Liquidation Test ***(check one box)***

✓ All Debtor(s) property is claimed as exempt.

Debtor(s) has non-exempt property valued at $_____for purposes of § 1325(a)(4) and plan provides for distribution of  $_____ to allowed priority and unsecured general creditors.

(2) Funding: § 5(b) claims to be paid as follows ***(check one box)***:

✓ Pro rata

100%

Other (Describe)

## Part 6:  Executory Contracts & Unexpired Leases

✓**None.**  If "None" is checked, the rest of § 6 need not be completed.

| Creditor | Nature of Contract or Lease | Treatment by Debtor Pursuant to §365(b) |
|----------|------------------------------|------------------------------------------|
|          |                              |                                          |

## Part 7:  Other Provisions

### § 7(a)  General principles applicable to the Plan

(1) Vesting of Property of the Estate *(check one box)*
✓ Upon confirmation
    Upon discharge

(2) Subject to Bankruptcy Rule 3012, the amount of a creditor's claim listed in its proof of claim controls over any contrary amounts listed in Parts 3, 4 or 5 of the Plan.

(3) Post-petition contractual payments under § 1322(b)(5) and adequate protection payments under § 1326(a)(1)(B),(C) shall be disbursed to the creditors by the debtor directly.  All other disbursements to creditors shall be made by the Trustee.

(4) If Debtor is successful in obtaining a recovery in a personal injury or other litigation in which Debtor is the plaintiff, before the completion of plan payments, any such recovery in excess of any applicable exemption will be paid to the Trustee as a special Plan payment to the extent necessary to pay priority and general unsecured creditors, or as agreed by the Debtor and the Trustee and approved by the court.

### § 7(b)  Affirmative duties on holders of claims secured by a security interest in debtor's principal residence

(1) Apply the payments received from the Trustee on the pre-petition arrearage, if any, only to such arrearage.

(2) Apply the post-petition monthly mortgage payments made by the Debtor to the post-petition mortgage obligations as provided for by the terms of the underlying mortgage note.

(3) Treat the pre-petition arrearage as contractually current upon confirmation for the Plan for the sole purpose of precluding the imposition of late payment charges or other default-related fees and services based on the pre-petition default or default(s).  Late charges may be assessed on post-petition payments as provided by the terms of the mortgage and note.

(4) If a secured creditor with a security interest in the Debtor's property sent regular statements to the Debtor pre-petition, and the Debtor provides for payments of that claim directly to the creditor in the Plan, the holder of the claims shall resume sending customary monthly statements.

(5) If a secured creditor with a security interest in the Debtor's property provided the Debtor with coupon books for payments prior to the filing of the petition, upon request, the creditor shall forward post-petition coupon book(s) to the Debtor after this case has been filed.

**(6) Debtor waives any violation of stay claim arising from the sending of statements and coupon books as set forth above.**

6

### § 7(c)  Sale of Real Property

✓ **None.**  If "None" is checked, the rest of § 7(c) need not be completed.

(1)  Closing for the sale of _____ (the "Real Property") shall be completed within _____ months of the commencement of this bankruptcy case (the "Sale Deadline").  Unless otherwise agreed by the parties or provided by the Court, each allowed claim secured by the Real Property will be paid in full under §4(b)(1) of the Plan at the closing ("Closing Date").

(2)  The Real Property will be marketed for sale in the following manner and on the following terms:

(3)  Confirmation of this Plan shall constitute an order authorizing the Debtor to pay at settlement all customary closing expenses and all liens and encumbrances, including all § 4(b) claims, as may be necessary to convey good and marketable title to the purchaser.  However, nothing in this Plan shall preclude the Debtor from seeking court approval of the sale of the property free and clear of liens and encumbrances pursuant to 11 U.S.C. §363(f), either prior to or after confirmation of the Plan, if, in the Debtor's judgment, such approval is necessary or in order to convey insurable title or is otherwise reasonably necessary under the circumstances to implement this Plan.

(4)  Debtor shall provide the Trustee with a copy of the closing settlement sheet within 24 hours of the Closing Date.

(5)  In the event that a sale of the Real Property has not been consummated by the expiration of the Sale Deadline:

## Part 8:  Order of Distribution

**The order of distribution of Plan payments will be as follows:**

**Level 1:**  Trustee Commissions*
**Level 2:**  Domestic Support Obligations
**Level 3:**  Adequate Protection Payments
**Level 4:**  Debtor's attorney's fees
**Level 5:**  Priority claims, pro rata
**Level 6:**  Secured claims, pro rata
**Level 7:**  Specially classified unsecured claims
**Level 8:**  General unsecured claims
**Level 9:**  Untimely filed general unsecured non-priority claims to which debtor has not objected

*****Percentage fees payable to the standing trustee will be paid at the rate fixed by the United States Trustee not to exceed ten (10) percent.**

## Part 9:  Non Standard or Additional Plan Provisions

Under Bankruptcy Rule 3015.1(e), Plan provisions set forth below in Part 9 are effective only if the applicable box in Part 1 of this Plan is checked.  Nonstandard or additional plan provisions placed elsewhere in the Plan are void.

✓ **None.**  If "None" is checked, the rest of Part 9 need not be completed.

## Part 10:  Signatures

By signing below, attorney for Debtor(s) or unrepresented Debtor(s) certifies that this Plan contains no nonstandard or additional provisions other than those in Part 9 of the Plan.

Date: _May 19,_ _2020_

_Michael D. Sayles_
Attorney for Debtor(s)

If Debtor(s) are unrepresented, they must sign below.

Date: _____

_____
Debtor

Date: _____

_____
Joint Debtor

# EXHIBIT "E"

| Loan Number | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | Anntionette Jones | | | | | |
| Payments in POC (Arrears details) | Principal & interest due is $5,523.60 , Prepetition fees due is $3,080.96 , Escrow deficiency is $ | | | | | |
| Case Number | 18-13706 | | | | | |
| Filing Date | 6/4/2018 | | | | | |
| 1st Post Due Date | 7/1/2018 | | | | | |

| | | | POST-PETITION | | | |
|---|---|---|---|---|---|---|
| | | | PAYMENT CHANGES | | | |
| **EFFECTIVE** | 07/01/18 | 03/01/19 | 02/01/20 | 12/01/20 | 12/01/21 | 12/01/22 | 10/01/23 |
| **AMOUNT** | 504.91 | 446.57 | 467.92 | 490.72 | 469.31 | 525.24 | 480.31 |

| Date Received | Amount Received | Payment Amount Due | To/From Suspense | Suspense Balance | Due Date | Comments |
|---|---|---|---|---|---|---|
| | | | | 0.00 | | |
| 8/3/2018 | 77.00 | | 77.00 | 77.00 | | |
| 8/20/2018 | 77.00 | | 77.00 | 154.00 | | |
| 8/21/2018 | 352.40 | 501.46 | (149.06) | 4.94 | 7/1/2018 | |
| 9/19/2018 | 100.00 | | 100.00 | 104.94 | | |
| 9/25/2018 | 100.00 | | 100.00 | 204.94 | | |
| 10/10/2018 | 128.00 | | 128.00 | 332.94 | | |
| 10/17/2028 | 128.00 | | 128.00 | 460.94 | | |
| 11/23/20218 | 100.00 | 504.91 | (404.91) | 56.03 | 8/1/2018 | |
| 12/3/2018 | 100.00 | | 100.00 | 156.03 | | |
| 12/4/2018 | 200.00 | | 200.00 | 356.03 | | |
| 12/11/2018 | 100.00 | | 100.00 | 456.03 | | |
| 12/18/2018 | 150.00 | 504.91 | (354.91) | 101.12 | 9/1/2018 | |
| 12/27/2018 | 50.00 | | 50.00 | 151.12 | | |
| 12/28/2018 | 204.00 | | 204.00 | 355.12 | | |
| 1/23/2019 | 252.55 | 504.91 | (252.36) | 102.76 | 10/1/2018 | |
| 1/30/2019 | 252.55 | | 252.55 | 355.31 | | |
| 2/20/2019 | 252.55 | 504.91 | (252.36) | 102.95 | 11/1/2018 | |
| 2/27/2019 | 252.55 | | 252.55 | 355.50 | | |
| 3/19/2019 | 245.00 | 446.57 | (201.57) | 153.93 | 5/1/2019 | |
| 4/16/2019 | 252.00 | | 252.00 | 405.93 | | |
| 5/1/2019 | 252.55 | 446.57 | (194.02) | 211.91 | 6/1/2019 | PAYEMNTS FROM 12/01/2018 TO 04/01/20 |
| 5/8/2019 | 224.00 | | 224.00 | 435.91 | | |
| 5/15/2018 | 224.00 | 446.57 | (222.57) | 213.34 | 7/1/2019 | |
| 7/10/2019 | 100.00 | | 100.00 | 313.34 | | |
| 7/17/2019 | 150.00 | 446.57 | (296.57) | 16.77 | 8/1/2019 | |
| 7/24/2019 | 150.00 | | 150.00 | 166.77 | | |
| 7/30/2019 | 100.00 | | 100.00 | 266.77 | | |
| 8/14/2019 | 125.00 | | 125.00 | 391.77 | | |
| 8/21/2019 | 125.00 | 446.57 | (321.57) | 70.20 | 9/1/2019 | |
| 8/29/2019 | 125.00 | | 125.00 | 195.20 | | |
| 9/18/2019 | 200.00 | | 200.00 | 395.20 | | |
| 10/1/2019 | 245.00 | 446.57 | (201.57) | 193.63 | 10/1/2019 | |
| 10/23/2018 | 246.00 | | 246.00 | 439.63 | | |
| 10/31/2019 | 200.00 | 446.57 | (246.57) | 193.06 | 11/1/2019 | |
| 11/19/2019 | 100.00 | | 100.00 | 293.06 | | |
| 12/11/2019 | 165.00 | 446.57 | (281.57) | 11.49 | 12/1/2019 | |
| 12/18/2019 | 150.00 | | 150.00 | 161.49 | | |
| 1/3/2020 | 100.00 | | 100.00 | 261.49 | | |
| 1/8/2020 | 150.00 | | 150.00 | 411.49 | | |
| 1/23/2020 | 100.00 | 446.57 | (346.57) | 64.92 | 1/1/2020 | |
| 2/4/2020 | 200.00 | | 200.00 | 264.92 | | |
| 3/3/2020 | 300.00 | 467.92 | (167.92) | 97.00 | 2/1/2020 | |
| 3/18/2020 | 150.00 | | 150.00 | 247.00 | | |
| 3/27/2020 | 1232.31 | 467.92 | 764.39 | 1011.39 | 3/1/2020 | |
| 4/29/2020 | 233.96 | 467.92 | (233.96) | 777.43 | 4/1/2020 | |
| 5/5/2020 | 233.96 | 467.92 | (233.96) | 543.47 | 5/1/2020 | |
| 5/20/2020 | 116.98 | 467.92 | (350.94) | 192.53 | 6/1/2020 | |
| 5/27/2020 | 116.98 | | 116.98 | 309.51 | | |
| 6/2/2020 | 116.98 | | 116.98 | 426.49 | | |
| 6/9/2020 | 116.98 | 467.92 | (350.94) | 75.55 | 7/1/2020 | |
| 6/16/2020 | 116.98 | | 116.98 | 192.53 | | |
| 6/24/2020 | 116.98 | | 116.98 | 309.51 | | |
| 7/14/2020 | 116.98 | | 116.98 | 426.49 | | |
| 7/14/2020 | 116.98 | 467.92 | (350.94) | 75.55 | 8/1/2020 | |
| 7/28/2020 | 119.00 | | 119.00 | 194.55 | | |
| 8/5/2020 | 119.00 | | 119.00 | 313.55 | | |

| Date | Amount | Amount | Amount | Balance | Date | | |
|---|---|---|---|---|---|---|---|
| 8/17/2020 | 119.00 | | 119.00 | 432.55 | | | |
| 8/20/2020 | 119.00 | 467.92 | (348.92) | 83.63 | 9/1/2020 | | |
| 8/25/2020 | 119.00 | | 119.00 | 202.63 | | | |
| 8/28/2020 | 120.00 | | 120.00 | 322.63 | | | |
| 9/10/2020 | 120.00 | | 120.00 | 442.63 | | | |
| 9/18/2020 | 120.00 | 467.92 | (347.92) | 94.71 | 10/1/2020 | | |
| 10/16/2020 | 150.00 | | 150.00 | 244.71 | | | |
| 10/30/2020 | 300.00 | 467.92 | (167.92) | 76.79 | 11/1/2020 | | |
| 11/24/2020 | 250.00 | | 250.00 | 326.79 | | | |
| 12/24/2020 | 250.00 | 490.72 | (240.72) | 86.07 | 12/1/2020 | | |
| 1/8/2021 | 250.00 | | 250.00 | 336.07 | | | |
| 1/16/2021 | 250.00 | 490.72 | (240.72) | 95.35 | 1/1/2021 | | |
| 2/12/2021 | 250.00 | | 250.00 | 345.35 | | | |
| 2/26/2021 | 250.00 | 484.17 | (234.17) | 111.18 | 2/1/2021 | | |
| 3/25/2021 | 500.00 | 484.17 | 15.83 | 127.01 | 3/1/2021 | | |
| 4/22/2021 | 250.00 | | 250.00 | 377.01 | | | |
| 4/29/2021 | 250.00 | 484.17 | (234.17) | 142.84 | 4/1/2021 | | |
| 5/21/2021 | 250.00 | | 250.00 | 392.84 | | | |
| 6/3/2021 | 250.00 | 484.17 | (234.17) | 158.67 | 5/1/2021 | | |
| 6/21/2021 | 250.00 | | 250.00 | 408.67 | | | |
| 7/20/2021 | 250.00 | 484.17 | (234.17) | 174.50 | 6/1/2021 | | |
| 8/12/2021 | 250.00 | | 250.00 | 424.50 | | | |
| 8/24/2021 | 250.00 | 484.17 | (234.17) | 190.33 | 7/1/2021 | | |
| 9/30/2021 | 500.00 | 484.17 | 15.83 | 206.16 | 8/1/2021 | | |
| 10/26/2021 | 500.00 | 484.17 | 15.83 | 221.99 | 9/1/2021 | | |
| 11/29/2021 | 500.00 | 484.17 | 15.83 | 237.82 | 10/1/2021 | | |
| 2/11/2022 | 2602.97 | 484.17 | 2118.80 | 2356.62 | 11/1/2021 | | |
| 4/8/2022 | 465.00 | 469.31 | (4.31) | 2352.31 | 12/1/2021 | | |
| 5/26/2022 | 484.17 | 469.31 | 14.86 | 2367.17 | 1/1/2022 | | |
| 6/30/2022 | 467.00 | 469.31 | (2.31) | 2364.86 | 2/1/2022 | | |
| 7/21/2022 | 235.00 | 469.31 | (234.31) | 2130.55 | 3/1/2022 | | |
| 7/28/2022 | 235.00 | 469.31 | (234.31) | 1896.24 | 4/1/2022 | | |
| 8/19/2022 | 235.00 | 469.31 | (234.31) | 1661.93 | 5/1/2022 | | |
| 8/26/2022 | 235.00 | 469.31 | (234.31) | 1427.62 | 6/1/2022 | | |
| 9/22/2022 | 235.00 | 469.31 | (234.31) | 1193.31 | 7/1/2022 | | |
| 9/29/2022 | 235.00 | 469.31 | (234.31) | 959.00 | 8/1/2022 | | |
| 11/18/2022 | 175.00 | 469.31 | (294.31) | 664.69 | 9/1/2022 | | |
| 11/28/2022 | 460.00 | 469.31 | (9.31) | 655.38 | 10/1/2022 | | |
| 12/2/2022 | 200.00 | 469.31 | (269.31) | 386.07 | 11/1/2022 | | |
| 12/9/2022 | 200.00 | 525.24 | (325.24) | 60.83 | 12/1/2022 | | |
| 12/23/2022 | 200.00 | | 200.00 | 260.83 | | | |
| 12/30/2022 | 200.00 | | 200.00 | 460.83 | | | |
| 1/19/2023 | 235.00 | 525.24 | (290.24) | 170.59 | 1/1/2023 | | |
| 1/26/2023 | 235.00 | | 235.00 | 405.59 | | | |
| 2/17/2023 | 235.00 | 525.24 | (290.24) | 115.35 | 2/1/2023 | | |
| 3/14/2023 | 300.00 | | 300.00 | 415.35 | | | |
| 3/23/2023 | 235.00 | 525.24 | (290.24) | 125.11 | 3/1/2023 | | |
| 4/20/2023 | 235.00 | | 235.00 | 360.11 | | | |
| 4/27/2023 | 235.00 | | 235.00 | 595.11 | | | |
| 5/5/2023 | 120.00 | 525.24 | (405.24) | 189.87 | 4/1/2023 | | |
| 5/12/2023 | 150.00 | | 150.00 | 339.87 | | | |
| 5/18/2023 | 150.00 | | 150.00 | 489.87 | | | |
| 5/25/2023 | 110.00 | 525.24 | (415.24) | 74.63 | 5/1/2023 | | |
| 8/21/2023 | 200.00 | | 200.00 | 274.63 | | | |
| 8/22/2023 | 200.00 | | 200.00 | 474.63 | | | |
| 8/24/2023 | 200.00 | 525.24 | (325.24) | 149.39 | 6/1/2023 | | |
| 8/25/2023 | 200.00 | | 200.00 | 349.39 | | | |
| 9/8/2023 | 900.34 | 525.24 | 375.10 | 724.49 | 7/1/2023 | | |
| 9/13/2023 | 263.00 | 525.24 | (262.24) | 462.25 | 8/1/2023 | | |
| 9/13/2023 | 162.00 | 525.24 | (363.24) | 99.01 | 9/1/2023 | | |
| 9/15/2023 | 200.00 | | 200.00 | 299.01 | | | |
| 9/22/2023 | 200.00 | 480.31 | (280.31) | 18.70 | 10/1/2023 | | |
| 10/20/2023 | 125.00 | | 125.00 | 143.70 | | | |
| 12/1/2023 | 250.00 | | 250.00 | 393.70 | | | |
| 12/8/2023 | 250.00 | 480.31 | (230.31) | 163.39 | 11/1/2023 | | |
| 12/30/2023 | 125.00 | | 125.00 | 288.39 | | | |
| 1/8/2024 | 125.00 | | 125.00 | 413.39 | | | |
| 2/14/2024 | 275.00 | 480.31 | (205.31) | 208.08 | 12/1/2023 | | |
| 3/25/2024 | 263.00 | | 263.00 | 471.08 | | | |
| 4/1/2025 | 263.00 | 480.31 | (217.31) | 253.77 | 1/1/2024 | | |
| 4/15/2024 | 265.00 | 480.31 | (215.31) | 38.46 | 2/1/2024 | | |
| 5/31/2024 | 535.00 | 480.31 | 54.69 | 93.15 | 3/1/2024 | | |
| 7/15/2024 | 564.00 | 480.31 | 83.69 | 176.84 | 4/1/2024 | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7/29/2024 | 564.00 | 480.31 | 83.69 | 260.53 | 5/1/2024 | | |
| 8/26/2024 | 275.00 | 480.31 | (205.31) | 55.22 | 6/1/2024 | | |
| 9/3/2024 | 275.00 | | 275.00 | 330.22 | | | |
| 9/23/2024 | 275.00 | 480.31 | (205.31) | 124.91 | 7/1/2024 | | |
| 9/30/2024 | 400.00 | 480.31 | (80.31) | 44.60 | 8/1/2024 | | |
| 10/16/2024 | 400.00 | | 400.00 | 444.60 | | | |
| 10/28/2024 | 400.00 | 480.31 | (80.31) | 364.29 | 9/1/2024 | | |
| 11/18/2024 | 325.00 | 652.28 | (327.28) | 37.01 | 10/1/2024 | | |
| 12/6/2024 | 310.00 | | 310.00 | 347.01 | | | |
| 12/20/2024 | 315.00 | 652.28 | (337.28) | 9.73 | 11/1/2024 | | |
| 1/21/2025 | 625.00 | | 625.00 | 634.73 | | | |
| 2/18/2025 | 315.00 | 652.28 | (337.28) | 297.45 | 12/1/2024 | | |
| 3/3/2025 | 315.00 | | 315.00 | 612.45 | | | |
| | | | 0.00 | 612.45 | | | |
| | | | 0.00 | 612.45 | | | |
| | | | 0.00 | 612.45 | | NEXT DUE DARE 01/01/2025 | |
| | | | 0.00 | 612.45 | | | |
| | | | 0.00 | 612.45 | | | |
| | | | | | | | |
| **Arrears Due:** | 1/1/2025 | 652.28 | | | | | |
| | 2/1/2025 | 652.28 | | | | | |
| | 3/1/2025 | 652.28 | | | | | |
| | | | | | | | |
| Less suspense: | | (612.45) | | | | | |
| **TOTAL:** | | **$1,344.39** | | | | | |

# EXHIBIT "F"

## Payoff Calculation Totals (PAY4/PG1)

```
                    AS-OF 03/28/25   PAYOFF CALCULATION TOTALS 03/27/25   03:18:25
NAME A   JONES      CONTACT NAME ANNTIONETTE JONES
--------------------------------------------------------------------------------
PRINCIPAL BALANCE            46,977.95      ----------- RATE CHANGES ----------
INTEREST 03/28/25               913.18      INT FROM       RATE           AMOUNT
PRO RATA MIP/PMI                    .00     12/01/24    6.00000           913.18
ESCROW ADVANCE                1,487.00      03/28/25
ESCROW BALANCE                      .00
SUSPENSE BALANCE              1,390.49-
HUD BALANCE                         .00
REPLACEMENT RESERVE                 .00
RESTRICTED ESCROW                   .00
TOTAL-FEES                      224.75
ACCUM LATE CHARGES                  .00
ACCUM NSF CHARGES               300.00
OTHER FEES DUE                      .00
PENALTY INTEREST                    .00
FLAT/OTHER PENALTY FEE              .00        TOTAL  INTEREST            913.18
CR LIFE/ORIG FEE RBATE             .00        TOTAL  TO PAYOFF         51,970.53
RECOVERABLE BALANCE           3,458.14  NUMBER OF COPIES: 1    PRESS PF1 TO PRINT
                                               TOTAL PAGE 2                  .00

--------------------------------------------------------------------------------
```

# EXHIBIT "G"

**Fill in this information to identify your case and this filing:**

| | |
|---|---|
| Debtor 1 | **Anntionette Jones** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF PENNSYLVANIA |
| Case number | 18-13706 |

☐ Check if this is an amended filing

## Official Form 106A/B
## Schedule A/B: Property
12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

■ Yes.  Where is the property?

| 1.1 | | |
|---|---|---|
| **6678 Chew Avenue** | **What is the property?** Check all that apply | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
| Street address, if available, or other description | ■ Single-family home | |
| | ☐ Duplex or multi-unit building | |
| | ☐ Condominium or cooperative | |
| **Philadelphia      PA      19119-0000** | ☐ Manufactured or mobile home | Current value of the entire property?      Current value of the portion you own? |
| City          State          ZIP Code | ☐ Land | $103,500.00          $103,500.00 |
| | ☐ Investment property | |
| | ☐ Timeshare | **Describe the nature of your ownership interest** |
| | ☐ Other | **(such as fee simple, tenancy by the entireties, or a life estate), if known.** |
| | **Who has an interest in the property?** Check one | **tenant by the entirety** |
| **Philadelphia** | ■ Debtor 1 only | |
| County | ☐ Debtor 2 only | ☐ Check if this is community property |
| | ☐ Debtor 1 and Debtor 2 only | (see instructions) |
| | ☐ At least one of the debtors and another | |
| | Other information you wish to add about this item, such as local property identification number: | |
| | **$FMV of $115,000.00 minus 10% cost of sale equal $103,500.00** | |

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here..........................................................=>**

| $103,500.00 |
|---|

**Part 2:    Describe Your Vehicles**

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

■ No
☐ Yes

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                Best Case Bankruptcy